IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGELIC SALGADO,
As personal representative of the
WRONGFUL DEATH ESTATE OF
JONATHAN MOLINA,

       Plaintiff,

vs.                                                      Civ. No. 21-749 JCH/GBW

KEVIN SMITH, in his individual
capacity,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This case is before the Court on *Officer Kevin Smith's Motion for Partial Summary Judgment No. I: Dismissal of the Estate's Fourth Amendment Illegal Seizure . . . Claim[s] Based on the Application of Qualified Immunity* [Doc. 13]. The Court has considered the Plaintiff's response [Docs. 51 and 55] and Defendant's reply [Doc. 59], as well as the accompanying exhibits. After considering the law and the evidence before it, the Court concludes that the motion for qualified immunity should be granted.

## PROCEDURAL BACKGROUND

This case arises from a traffic stop on July 15, 2018, that culminated in the shooting death of automobile passenger Jonathan Molina (Plaintiff's decedent) by Officer Kevin Smith (Defendant).[1] In her Complaint [Doc. 1-1], Plaintiff brought three claims against both Defendant Smith and the New Mexico Department of Public Safety ("NMDPS"). Those claims were for alleged violation of Molina's Fourth Amendment rights to be free from unreasonable seizure and

---

[1] Officer Smith was shot in the leg during the encounter, but he recovered from his injuries.

excessive use of force (Counts I and II) as well as for Officer Smith's failure to render aid to Molina (Count III). However, the parties have jointly dismissed all claims against NMDPS (*see* Doc. 34), as well as the claims against Officer Smith for excessive force and failure to render aid. *See* Doc. 59. Accordingly, all that remains is Plaintiff's unreasonable seizure claim against Officer Smith.

## FACTUAL BACKGROUND

The evidence before the Court, viewed in the light most favorable to the Plaintiff, shows the following:

In the early morning hours of July 15, 2018, at approximately 2:00 a.m., Officer Smith was on random patrol along Interstate 25 in Albuquerque, New Mexico. He saw a blue Honda sedan driven by Brandon Smith[2] traveling at a high rate of speed. Using his radar, Officer Smith clocked the car traveling at approximately 101 mph in a 65 mph zone. Officer Smith pursued the blue Honda and radioed dispatch with both his location and the Honda's license plate number. Dispatch informed Officer Smith that the license plate was registered to a red Honda. Officer Smith gave the dispatcher the license plate information a second time, and she confirmed it was for a red Honda. Based on this information and the speeding violation, Officer Smith pulled over the blue Honda and parked his police vehicle behind it. The Plaintiff does not dispute that the stop was justified at its inception and concedes that the discrepancy between the license plate and the color of the vehicle provided a valid reason to conduct the stop. Doc. 51 at 4.

As he got out of his police car, Officer Smith heard the Honda's engine revving loudly. Using his vehicle's public address system, Officer Smith directed the driver of the Honda to turn off the engine. Brandon Smith complied with the order. Then Officer Smith walked up to the

---

[2] To avoid confusion, the Court will refer to the driver of the blue Honda as Brandon Smith and to the Defendant as Officer Smith.

2

driver's side of the Honda, where he saw two men inside. The driver identified himself as Brandon Smith. He said that he had neither registration nor insurance for the Honda because he had recently purchased it. Brandon Smith also said that the license plate on the Honda belonged to a different, red Honda that he owned. Knowing that the license plate on the blue Honda corresponded to a red Honda, Officer Smith began an investigation as to whether the blue Honda was stolen. He looked at the VIN number on the driver's side dashboard of the blue Honda, then asked the dispatcher for the VIN number associated with the license plate currently attached to the blue car. The dispatcher responded with a number that did not match the blue Honda's VIN, increasing Officer Smith's suspicion that the car might be stolen.[3]

Officer Smith asked Brandon Smith to "hop out" of the blue Honda because he intended to issue Brandon citations for speeding and improper use of registration. Officer Smith also wanted to question Brandon about the license plate separately from the passenger so that he could compare their independent statements. Brandon Smith got out of the Honda, and he and Officer Smith stood between the two vehicles while they talked.

Eventually, the two continued their conversation to the right side of the police car, out of view of Officer Smith's dash camera. Still concerned the blue Honda might be stolen, Officer Smith asked Brandon Smith the name of his passenger. Brandon responded, "Johnny . . . Jonathan," but seemed nervous to Officer Smith. Deft's Ex. G, Doc. 64-1, at pp. 7-8 of 30.

---

[3] Plaintiff argues that Officer Smith could not have reasonably believed that the blue Honda may have been stolen because while he was being questioned by Officer Smith, Brandon Smith handed the officer the title to the car with Brandon's name and signature on it. However, the evidence before the Court does not support that assertion. There are crime scene photographs of the car title, which Plaintiff has attached to her response brief. However, there is no evidence that Officer Smith ever saw the car title. The dash camera video does not show what document Brandon is handing to Officer Smith. Further, at his deposition Officer Smith testified that Brandon did not have the car title, and that he did not remember seeing it. *See* Deft's Ex. G, Doc. 64-1, at p. 1 of 30. Therefore, there is no evidence that the car title should have played a role in Officer Smith's level of suspicion as to whether the car was stolen.

Brandon said that he had known Johnny for a couple of months but could not remember his last name. *Id*. This raised Officer Smith's suspicions. Officer Smith testified that, based on his experience, "[w]hen people have memory lapses, such as not knowing the name of the person that they say that they've known for months [and who] is inside their vehicle, in addition to them being nervous when asked about the name, that could mean that a crime has been taken or that they're concealing somebody's identity, usually because of a warrant." *See* Ex. G, Doc. 64-1, at 9 of 30. *See also id*. at pp. 12-13 of 30. Then Officer Smith directed Brandon Smith to stand in front of his police car.

At this point, according to the dash camera video the blue Honda had been pulled over to the side of the road for approximately five minutes. Officer Smith walked to the front passenger window. There, he spoke to the passenger, Jonathan Molina. Officer Smith wanted to speak with the passenger to continue his investigation into whether the blue Honda had been stolen and to determine whether Brandon Smith was concealing his passenger's identity. Deft's Ex. G, Doc. 64-1, at p. 17 of 30. The passenger identified himself as Jonathan Molina. Officer Smith noticed that Molina's voice squeaked, he appeared nervous, was trembling, and would not look him in the eyes.[4] Smith Aff., Doc. 13-1 at ¶ 12. Officer Smith thought these characteristics displayed Molina's nervousness. *Id*. Molina handed Officer Smith his Social Security card, which identified him as Jonathan Molina. *Id*. at ¶ 13. Officer Smith asked Molina if he had any outstanding warrants. *Id*. at ¶ 14. Molina responded that he was an "absconder," which confirmed that there was some type of warrant out for his arrest. Then Molina took out a packet of cigarettes and removed one. *Id*. at ¶ 18. However, Officer Smith took the cigarettes and Social

---

[4] Plaintiff disputes the assertion that Molina appeared nervous or that his behavior was unusual in any way. However, there is no evidence to contradict Officer Smith's account.

4

Security card from Molina and placed them on the roof of the car. Officer Smith then asked Molina to "hop out" of the blue Honda so that he could confirm the warrant. *Id*. at ¶ 19.

Molina started to get out of the car, but Officer Smith pushed him back into the passenger compartment. Officer Smith asserts that Molina "clenched up his muscles and pull his legs underneath him, as if to gain leverage." *Id*. at ¶ 20. Officer Smith believed that Mr. Molina was preparing himself for a confrontation and an attempt to escape from Officer Smith. *Id*. Defendant further asserts that instead of exiting the Honda at a "normal speed," Molina "charged out of the vehicle in an attempt to move past" Officer Smith. *Id*. at ¶ 21. The dash camera video of the encounter shows Molina quickly getting up out of the passenger seat and Officer Smith pushing him back in. It happens very fast, but from the video it's difficult to discern whether Molina is trying to move past Officer Smith. On the other hand, the video does not disprove Officer Smith's version of events, which is the only one before the Court. In any event, after Officer Smith pushed Molina back into the blue Honda, a violent physical struggle between the two men unfolded in the front seat of the Honda, largely out of sight of Officer Smith's dash camera. In the end, Smith was shot in the leg and Molina was dead from several gunshot wounds.

## DISCUSSION

I.   **LEGAL FRAMEWORK**

    A.   **Summary Judgment**

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Henderson v. Inter-Chem Coal Co*., 41 F.3d 567, 569

(10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), as modified on denial of reh'g. "In applying this standard, we construe the evidence in the light most favorable to [the plaintiff] as the nonmoving party." *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

When the defendant has moved for summary judgment based on qualified immunity, the Court must still view the facts in the light most favorable to the nonmoving party and resolve all factual disputes and reasonable inferences in its favor. *See Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

**B.     Qualified Immunity**

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)). If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. On the other hand, if the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact

and that he or she is entitled to judgment as a matter of law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

### C. Unreasonable Seizure

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ... shall not be violated." U.S. Const. amend. IV. A "seizure" for the purposes of the Fourth Amendment occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007). A traffic stop is a seizure for Fourth Amendment purposes. *United States v. Valenzuela*, 494 F.3d 886, 888 (10th Cir. 2007). In a routine traffic stop, an officer "may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation." *United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005) (citing *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004)). "Once those tasks are completed, a driver must be allowed to proceed on his way unless reasonable suspicion exists that the driver is engaged in criminal activity or the driver consents to additional questioning." *Id*. For there to be reasonable suspicion, all that is required is that "the officer ... must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (internal quotation marks omitted).

The length of a detention must also be reasonable. The Supreme Court has held that a search which unduly extends a detention may violate the Fourth Amendment's requirement of reasonableness. *See United States v. Place*, 462 U.S. 696, 709 (1983) (holding 90-minute detention of person's luggage "alone preclude[d] the conclusion that the seizure was reasonable

7

in the absence of probable cause"); *see also United States v. Scales*, 903 F.2d 765, 769 (10th Cir. 1990) (holding seven-hour delay went beyond "brevity" required under Fourth Amendment). Rather, the length of the stop and the potential intrusion on an individual's Fourth Amendment rights must be juxtaposed against "the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685 (1985) (noting "our cases impose no rigid time limitation on *Terry* stops"); *see also United States v. Jones*, 44 F.3d 860, 871 (10th Cir.1995).

**II.     ANALYSIS**

Plaintiff concedes that Officer Smith was justified in pulling over the blue Honda and speaking with the driver, Brandon Smith. Therefore, this case presents a very narrow, two-part question: Did Officer Smith violate Molina's right to be free from unreasonable seizure during the encounter he initiated with Molina after speaking with Brandon Smith? And if so, was Officer Smith's conduct prohibited by clearly established law? The Court answers the first question in the negative and does not reach the second.

For an investigative detention to be found reasonable, the law enforcement officer's action must have been "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). As the Tenth Circuit has explained, detention of a motorist is justified at its inception in two circumstances: When the officer has "(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999) (internal quotation marks and citations omitted). Here, Plaintiff concedes that the stop was justified at its inception because the

dispatcher informed Officer Smith that the blue Honda's license plate did not match the car. The Court further concludes that the undisputed material facts show that Officer Smith saw the blue Honda travelling over 100 mph in a 65 mph zone. This also justified Officer Smith's stop of the blue Honda at its inception.

The second part of the *Terry* test requires the officer's later actions to be reasonably related in scope to the circumstances which justified the stop. *Terry*, 392 U.S. at 20. In this case, Plaintiff argues that Officer Smith exceeded the permissible bounds of the traffic stop by approaching and questioning Molina, the passenger, about his identity and whether he had any warrants. According to Plaintiff, Officer Smith did not have reasonable suspicion to believe that Molina had committed a crime.

However, the Court disagrees and concludes that Officer Smith was justified in approaching Molina. The Supreme Court has held that during a traffic stop police may question vehicle passengers. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975). Indeed, the Court has stated that an officer making a traffic stop may order any passengers to get out of the car pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997). Similarly, on numerous occasions the Tenth Circuit has noted that an officer may question both the driver and passenger as part of a routine traffic stop. *See, e.g., United States v. Jackson*, 235 Fed. App'x 707, 710, 2007 WL 1502278 at **2 (10th Cir. May 24, 2007) ("Our precedent explicitly and repeatedly affirms the right of an officer to question both the driver and her passenger as part of a routine traffic stop.") (collecting cases); *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989) (concluding that during initial traffic stop, police officer could legitimately ask questions of both driver and passenger relating to their identities, travel plans, and ownership of the car).

The foregoing authorities establish that Officer Smith did not violate Molina's rights against unreasonable seizure when he approached him during the course of the traffic stop and asked him questions about his identity and with the intent to ask him about ownership of the car. The law permits officers to take such actions without any reasonable suspicion that the passenger is involved in a crime.

That said, Officer Smith's actions in approaching and questioning Molina were further justified by Officer Smith's reasonable suspicion that the blue Honda may have been stolen. It was reasonable to approach and question the passenger of the vehicle to investigate that possibility, as well as the possibility that Brandon Smith may have been hiding the identity of his passenger. The facts known to Officer Smith that support reasonable suspicion were: (1) Brandon Smith had been driving the blue Honda at over 100 mph in a 65 mph zone; (2) the blue Honda's license plate was registered to a different car; (3) Brandon was unable to produce valid registration or proof of insurance for the blue Honda; (4) Brandon said that he had known his passenger, "Johnny" or "Jonathan" for a couple of months, yet he didn't know his last name, which is unusual; (5) Brandon became nervous when asked about his passenger; and (6) the VIN number on the blue Honda did not match the VIN associated with the license plate on the car. These facts amply establish Officer Smith's reasonable suspicion that a crime was being committed by Brandon Smith, Molina, or both—thereby justifying approaching and interviewing Molina.

Although Plaintiff attempts to undermine this conclusion, none of her arguments are persuasive. There is no evidence that Brandon Smith ever showed Officer Smith the title to the blue Honda; therefore, the existence of the title does not undermine the officer's justifiable interest in investigating whether it was stolen. Although Plaintiff argues that Officer Smith

should have been satisfied by the fact that the VIN on the blue Honda was not flagged as stolen, that is not determinative because as far as Officer Smith knew at the time, the theft could have been so recent that the car had not yet been reported stolen. And finally, although Plaintiff contends that Officer Smith should have taken other steps to investigate the potential car theft, the fact is that Officer Smith was not able to complete his investigation due to the outbreak of violence between him and Molina. Therefore, in addition to the fact that Officer Smith was legally justified by both Supreme Court and Tenth Circuit precedent in questioning the passenger, Molina, during the traffic stop, the Court concludes that reasonable suspicion also justified his actions.

Based on all of the foregoing, the Court concludes that Defendant Brandon Smith did not violate Jonathan Molina's Fourth Amendment right against unreasonable seizure, and therefore Defendant Kevin Smith is entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that *Officer Kevin Smith's Motion for Partial Summary Judgment No. I: Dismissal of the Estate's Fourth Amendment Illegal Seizure . . . Claim[s] Based on the Application of Qualified Immunity* [Doc. 13] is **GRANTED IN PART** as to Plaintiff's claim for unreasonable seizure against Defendant Kevin Smith. Officer Smith's motion for qualified immunity on the excessive force claim [Doc. 15] is **DENIED AS MOOT**.

_____
SENIOR UNITED STATES DISTRICT JUDGE