IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGELIC SALGADO,
As personal representative of the
WRONGFUL DEATH ESTATE OF
JONATHAN MOLINA,

      Plaintiff,

vs.                                                                                                        Civ. No. 21-749 JCH/GBW

KEVIN SMITH, in his individual
capacity,

      Defendant.

## MEMORANDUM OPINION AND ORDER

      This case is before the Court on *Officer Smith's Motion for Partial Summary Judgment No. II: Dismissal of the Estate's Fourth Amendment Excessive Force Claim Based on the Application of Qualified Immunity* [Doc. 15]. The Court has previously granted Defendant Kevin Smith's motion for qualified immunity on Plaintiff's unreasonable seizure claim. [Doc. 67]. The Court now turns to the portion of the motion seeking qualified immunity for Plaintiff's Fourth Amendment excessive force claim in Count II of the *Complaint* [Doc. 1-1]. In addition to Defendant's motion, the Court has considered the factual recitations and evidence set forth in Defendant's companion motion [Doc. 13] that he incorporated into the motion currently under consideration, the Plaintiff's response [Docs. 55 and 56], and Defendant's reply [Doc. 64], as well as the accompanying exhibits. After considering the law and the evidence before it, the Court concludes that the Defendant's motion for qualified immunity on Plaintiff's Fourth Amendment excessive force claim should be granted.

**FACTUAL BACKGROUND**

The evidence before the Court, viewed in the light most favorable to the Plaintiff, shows the following:

A.   **The Initial Stop**

In the early morning hours of July 15, 2018, at approximately 2:00 a.m., the Defendant, Officer Kevin Smith of the New Mexico State Police, was on patrol along Interstate 25 in Albuquerque, New Mexico. He saw a blue Honda sedan driven by Brandon Smith[1] traveling at a high rate of speed. Using his radar, Officer Smith clocked the car traveling at approximately 101 mph in a 65-mph zone. Officer Smith pursued the blue Honda and radioed dispatch with both his location and the Honda's license plate number. Dispatch informed Officer Smith that the license plate was registered to a red Honda. Based on this information and the speeding violation, Officer Smith turned on his lights, pulled over the blue Honda, and parked his police vehicle behind it. The Plaintiff does not dispute that the traffic stop was justified at its inception. Doc. 51 at 4.

Officer Smith's dashcam continued to record the encounter from behind the blue Honda. Officer Smith walked up to the driver's side of the Honda, where he saw two men inside. The driver identified himself as Brandon Smith. He said that he had neither registration nor insurance for the Honda because he had recently purchased it. Brandon Smith also said that the license plate on the Honda belonged to a different, red Honda that he owned. Knowing that the license plate on the blue Honda corresponded to a different car, Officer Smith began an investigation as to whether the blue Honda was stolen. He looked at the VIN number on the driver's side dashboard of the blue Honda, then asked the dispatcher for the VIN number associated with the

---

[1] To avoid confusion, the Court will refer to the driver of the blue Honda as Brandon Smith and to the Defendant as Officer Smith.

license plate currently attached to the blue car. The dispatcher responded with a number that did not match the blue Honda's VIN, increasing Officer Smith's suspicion that the car might be stolen.

Officer Smith asked Brandon Smith to "hop out" of the blue Honda because he intended to issue Brandon citations for speeding and improper use of registration. Still concerned the blue Honda might be stolen, Officer Smith asked Brandon Smith the name of his passenger. Brandon responded, "Johnny . . . Jonathan," but seemed nervous to Officer Smith. Deft's Ex. G, Doc. 64-1, at pp. 7-8 of 30. Brandon said that he had known Johnny for a couple of months but could not remember his last name. *Id*. This raised Officer Smith's suspicions. Officer Smith testified that, based on his experience, "[w]hen people have memory lapses, such as not knowing the name of the person that they say that they've known for months [and who] is inside their vehicle, in addition to them being nervous when asked about the name, that could mean that a crime has been taken or that they're concealing somebody's identity, usually because of a warrant." *See* Ex. G, Doc. 64-1, at 9 of 30. *See also id*. at pp. 12-13 of 30.

B.      **The Encounter with Mr. Molina**

At this point, Officer Smith walked to the front passenger window. There, he spoke to the passenger, Jonathan Molina. Officer Smith wanted to speak with the passenger to continue his investigation into whether the blue Honda had been stolen and to determine whether Brandon Smith was concealing his passenger's identity. Deft's Ex. G, Doc. 64-1, at p. 17 of 30. The passenger identified himself as Jonathan Molina. Officer Smith noticed that Mr. Molina appeared nervous. Smith Aff., Doc. 13-1 at ¶ 12. Mr. Molina handed Officer Smith his Social Security card, which identified him as Jonathan Molina. *Id*. at ¶ 13. Officer Smith asked Mr. Molina if he had any outstanding warrants. *Id*. at ¶ 14. Mr. Molina responded that he had a warrant and was

3

an "absconder." *Id*. Officer Smith then asked Mr. Molina to "hop out" of the blue Honda so that he could confirm the warrant. *Id*. at ¶ 19.

C. **Officer Smith's Initial Use of Force**

Mr. Molina started to get out of the car, but Officer Smith pushed him back into the passenger compartment. Plaintiff's Ex. 1 to Doc. 55 (dash camera recording, referred to hereafter as "Pltf's Ex. 1"). Officer Smith asserts that Mr. Molina "clenched up his muscles and pulled his legs underneath him, as if to gain leverage." Smith Aff., Doc. 13-1 at ¶ 20. Officer Smith believed that Mr. Molina was preparing himself for a confrontation and an attempt to escape from Officer Smith. *Id*. Defendant further asserts that instead of exiting the Honda at a "normal speed," Mr. Molina "charged out of the vehicle in an attempt to move past" Officer Smith. *Id*. at ¶ 21. The dash camera video[2] of the encounter shows Mr. Molina quickly getting up out of the passenger seat and Officer Smith pushing him back inside. Pltf's Ex. 1 at 9:48. At this point, a violent physical struggle between the two men unfolded in the front seat of the Honda. The struggle began with Mr. Molina in the front seat and Officer Smith standing just outside the passenger side of the car, and then moved largely out of sight[3] as Officer Smith moved into the car with Mr. Molina.

At the start of the struggle, Officer Smith can be seen pulling out his handcuffs and trying to restrain Mr. Molina, who appears to be resisting. Pltf's Ex. 1 at 9:53; Smith Aff. at ¶ 22. In the video, the pair struggle for about 23 seconds. Pltf's Ex. 1. During this time, Mr. Molina was inside the car, while Officer Smith was largely standing outside. Based upon the video (which is

---

[2] The Court notes that the audio quality of the recording is muffled and full of static, making it very difficult to distinguish words.

[3] The action inside the car is not visible through the rear window of the blue Honda, perhaps because of the nighttime lighting or perhaps because of window tinting. *See* Pltf's Ex. 1; Smith Depo. at 218.

4

consistent with Officer Smith's affidavit), Officer Smith appeared to be trying to restrain Mr. Molina and then started making punching motions in Mr. Molina's direction. *Id*. at 10:05. According to Officer Smith, Mr. Molina swung his arms and knocked the handcuffs out of Officer Smith's hands.[4] Smith Aff. at ¶ 22. In response to this resistance, Officer Smith struck Mr. Molina on the head at least two times. *Id*. at ¶ 23.

At some point, Officer Smith heard a "boom" and felt pain in his left leg. Smith Aff. at ¶ 24. Thinking Mr. Molina had tased him, Officer Smith tried to gain control over Mr. Molina's hand. *Id*. As he did so he saw the muzzle of a gun, and he believed that Mr. Molina had shot him in the leg. *Id*. However, Officer Smith did not see the gun go off, nor did he see Mr. Molina pull the trigger. Variously at Docs. 51-1 and 64-1, Kevin Smith Depo. ("Smith Depo.") at 254-57. Crime scene photographs confirm that there was a gun other than Officer Smith's weapon in the car.

At this point, the struggle between the two men moved inside the car. Pltf's Ex. 1 at 10:12. The back window of the blue Honda is dark. As a result, the dash camera recording does not clearly show what transpired, though despite the poor audio quality one can clearly make out the sounds of a struggle. According to the video, the struggle inside the car lasted for a full

---

[4] Relying on *Pauly v. White*, 874 F.3d 1197, 1217-18 (10th Cir. 2017), Plaintiff urges the Court to discount Officer Smith's "self-serving" account of events because Jonathan Molina is not here to tell his side of the story. Doc. 51 at 6, 8. In *Pauly* the court stated that in a case involving the deadly use of force, rather than simply taking the officer's version of events, a court should consider any physical evidence, inconsistencies in the officer's testimony and "circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *Pauly*, 874 F.3d at 1218 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). In other words, the court must view the evidence "in the light most favorable to Plaintiff[]." *Id*. On the other hand, nothing in *Pauly* states that the court should discount either a video recording of the encounter or an officer's statement that is not contradicted or otherwise undermined by other evidence, such as physical evidence, circumstantial evidence, or inconsistencies in the officer's testimony. Here, Plaintiff suggests that the Court disregard Officer Smith's version of events, but she does not point to evidence that could convince a rational factfinder that his version is false.

minute. Pltf's Ex. 1. In two instances Mr. Molina's foot briefly can be seen sticking out of the car, *id*. at 10:49 and 11:00, then Officer Smith's head emerges from the car door, *id*. at 11:07, and then Mr. Molina's foot and leg can be seen protruding out of the car as well. *Id*. at 11:11.

According to Officer Smith, while he was fighting with Mr. Molina inside the car for control of Mr. Molina's gun, Mr. Molina tried to grab Officer Smith's gun and remove it from the holster on his right hip, leading to a struggle for both weapons. Smith Aff at ¶ 26. Then Officer Smith heard Mr. Molina call for Brandon Smith to return to the car, alerting Officer Smith to the potential danger of an attack from Brandon Smith. Smith Aff at ¶ 27; Pltf's Ex. 1 at 10:48-10:52. Officer Smith bit Mr. Molina's arm, causing Mr. Molina to briefly relax his grip on Officer Smith's gun. Smith Aff at ¶ 30. Mr. Molina then bit Officer Smith in the left shoulder. *Id*. Officer Smith began moving out of the car and moved his right side with its gun and holster away from Smith. Smith Aff. at ¶ 31; Pltf's Ex. 1 at 11:12. According to Officer Smith, Mr. Molina continued to hold onto Smith's handgun until Mr. Molina lost his grip. Smith Aff. at ¶ 31. Officer Smith released his grip on Mr. Molina's gun/hand and drew his own gun from its holster. *Id*. As Officer Smith moved away, Mr. Molina's hand and wrist can be seen emerging from the car reaching towards Officer Smith's gun. Pltf's Ex. 1 at 11:13. Officer Smith immediately pointed his at Mr. Molina, who was still inside the car, and fired at Mr. Molina. Smith Aff. at ¶ 31. A gunshot followed immediately by a shout/groan can be heard on the recording. Pltf's Ex. 1. at 11:14.

Plaintiff does not claim that Officer Smith's use of force up to this point was excessive. *See* Doc. 55 at 29.

D.     **Officer Smith's Subsequent Use of Force**

At this point, events unfolded extremely rapidly. After firing his first shot, Officer Smith quickly moved to the right and away from the passenger door, which was standing ajar. Pltf's Ex. 1 at 11:15. Officer Smith had not managed to get Mr. Molina's gun away from him, so he assumed Mr. Molina still had possession of it. Smith Aff. at ¶ 34. For a few seconds Officer Smith was out of sight of the dashcam, and nothing of Mr. Molina can be seen on the video. Pltf's Ex. 1 at 11:15-11:19. According to Officer Smith's affidavit, he was standing in Mr. Molina's line of fire. *Id*. at ¶ 38. Officer Smith, pointing his weapon, yelled at Mr. Molina to put his hands in the air. Smith Aff. at ¶ 36; Pltf's Ex. 1 at 11:19. Then, he immediately moved to stand behind the Honda with his back to the patrol car and gun pointing toward the Honda's rear windshield. Pltf's Ex. 1 at 11:21. Officer Smith asserts that he moved into this position to get out of Mr. Molina's direct line of fire. Smith Aff. at ¶ 39.

As Officer Smith moved into that position and immediately after he yelled at Mr. Molina to put his hands in the air, one can see on the video a brief flash of Mr. Molina's foot or leg coming out of the Honda's passenger door. Pltf's Ex. 1 at 11:20-11:21. At that point, Officer Smith immediately fired seven shots in quick succession into the Honda through the rear window. Pltf's Ex. 1 at 11:21-11:25. The sounds of screaming can be heard on the video. *Id*. According to the dashcam recording, about eight seconds elapsed between Officer Smith's first shot to the time he began firing the volley of seven shots. Approximately two to three seconds elapsed between the time Officer Smith told Mr. Molina to put his hands in the air and when Officer Smith began firing the volley of seven shots.

At the time he fired the volley of seven shots, Officer Smith knew or had a reasonable basis to believe that Mr. Molina: (1) had absconded from a warrant for his arrest, (2) had

7

violently resisted arrest, (3) had shot him in the leg, (4) had tried to get control of Officer Smith's gun, (5) still had a gun in the Honda (6) did not visibly obey the command to put his hands in the air, and (7) had made a motion with his leg outside the car that appeared to Officer Smith as though he was trying to get out of the Honda. In addition, nothing in the record indicates that Officer Smith could be assured that Mr. Molina would not open fire at him through the back window of the Honda.

After filing those seven shots, Officer Smith ordered Mr. Molina to put his hands in the air and get out of the car. Smith Aff. at ¶ 42. Then Officer Smith radioed dispatch to inform them that shots had been fired, the suspect was down, and an ambulance was needed. *Id*. at ¶ 44.

## DISCUSSION

I. **LEGAL FRAMEWORK**

   A. **Summary Judgment**

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), as modified on denial of reh'g. "In applying this standard, we construe the evidence in the light most favorable to [the plaintiff] as the nonmoving party." *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

When the defendant has moved for summary judgment based on qualified immunity, the Court must still view the facts in the light most favorable to the nonmoving party and resolve all

factual disputes and reasonable inferences in its favor. *See Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). The Court need not necessarily address the two prongs of the qualified immunity analysis in that order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)). If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. On the other hand, if the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

### C. Use of Excessive Force

The Court must assess excessive force claims under a "reasonableness" standard. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 398 (1989). "That perspective includes an 'examination of the information possessed by the officers.'" *Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

There are certain circumstances in which an officer may use deadly force. For example, "[a]n officer's use of deadly force in self-defense is not constitutionally unreasonable." *Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 703-04 (10th Cir. 1995) (holding that officer acted reasonably in shooting suspect coming at him with knife in attack position). Furthermore, in certain instances an officer may use deadly force to prevent a suspect from escaping. As the Supreme Court has noted, an officer may not use deadly force in all circumstances merely to prevent the escape of a felony suspect. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Rather, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id*.

However, what is clear is that the officer is required only to be reasonable—not correct—in his or her evaluation of the threat posed by the suspect. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001), overruled on other grounds, *Pearson v. Callahan*, 555 U.S. 223 (2009)). "A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is often ... too late to take safety precautions. *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (internal citation and quotations omitted). *See also Palacios v. Fortuna*, 61 F.4th 1248, 1262 (10th Cir. 2023).

In *Graham*, 490 U.S. at 396-97, the Supreme Court listed three factors that affect whether force was excessive, including (1) severity of suspected crime, (2) whether the suspect posed an immediate threat to officers or others, and (3) whether the suspect resisted arrest or attempted to flee. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case ...." *Graham*, 490 U.S. at 396. As a result of the particularized analysis required, "a qualified immunity excessive force case does not always call for a *Graham* analysis." *Hemry v Ross*, 62 F.4th 1248, 1258 (10th Cir. 2023).

## II.     ANALYSIS

Here, Plaintiff does not dispute Officer Smith's argument that he did not violate the Fourth Amendment during the first part of his struggle with Mr. Molina—that is, when he punched Mr. Molina in the head, bit his arm, and fired his first shot at Mr. Molina. Rather, Plaintiff argues that Officer Smith violated Mr. Molina's right to be free from the excessive use of force when he shot Mr. Molina seven additional times after shooting him the first time. *See generally* Doc. 55 at 29-35. Therefore, the two-part question presented in this case is whether Plaintiff has met her burden to show that Officer Smith violated Mr. Molina's right to be free from the use of excessive force when he fired the second volley of shots at Mr. Molina, and if so, that Officer Smith's conduct was prohibited by clearly established law. The Court answers both questions in the negative.

### A.     Constitutional Violation

As noted above, the question of whether Officer Smith used unconstitutionally excessive force is subject to an objective reasonableness standard based on the perspective of an officer at the scene and the information known to the officer at the time. The Court must evaluate the

11

objective reasonableness of the officer's actions based on "whether the totality of the circumstances justified the use of force," and "pay careful attention to the facts and circumstances of the particular case." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (quoting *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)).

Under the totality of the circumstances presented by the undisputed material facts, the Court concludes that Officer Smith did not violate Mr. Molina's Fourth Amendment right to be free of the excessive use of force. First, Mr. Molina admitted to Officer Smith that he had absconded from a warrant for his arrest, and then he resisted arrest. He resisted initially by trying to get past Officer Smith and then by violently resisting the officer's efforts to handcuff him. This included knocking the cuffs out of Officer Smiths hands and effectively wrestling with Officer Smith. These are serious crimes. Second, while Officer Smith was struggling to place Mr. Molina under arrest, Mr. Molina grabbed for the officer's gun in its holster—an act that Officer Smith could reasonably interpret as an attempt to disarm him. Third, during the struggle Officer Smith was shot in the leg, and soon after that he could see the barrel of a gun in Mr. Molina's hands. At that point, Mr. Molina was still trying to get control of Officer Smith's gun, and his hand can be seen in the video reaching for the officer's gun. Fourth, although Officer Smith was able to extricate himself from the struggle by shooting Mr. Molina once, he had reasonable grounds to believe that he had not managed to disarm Mr. Molina and that Mr. Molina still had a gun with him in the car. Fifth, although Brandon Smith had stayed out of the struggle to that point and had not come to Mr. Molina's aid when called, Officer Smith still had reasonable grounds to worry about the possibility of a threat from both Brandon Smith and Mr. Molina. Sixth, due to the opaqueness of the Honda's rear window, it is impossible for anyone, including Officer Smith, to know whether or not Mr. Molina had complied with Officer Smith's

order to place his hands in the air. What Officer Smith could see was that Mr. Molina's foot and lower leg emerged from the Honda in a way that under the circumstances reasonably appeared to Officer Smith as though Mr. Molina was trying to get out of the car. Thus, a reasonable officer could conclude that Mr. Molina was still trying to either escape or use deadly force upon Officer Smith. Finally, as he stood behind the Honda, Officer Smith could not be certain that Mr. Molina would not open fire at him through the back window in the same way that he fired upon Mr. Molina.

Based upon all of the foregoing, the Court concludes that the undisputed material facts demonstrate that Officer Smith had an objectively reasonable basis to believe that Mr. Molina still posed a deadly threat both to him and to the public at the time he fired the second through eighth shots at Mr. Molina. Therefore, Officer Smith did not violate Mr. Molina's right to be free from the excessive use of force, and he is entitled to qualified immunity.

**B.   Clearly Established Law**

Plaintiff points to two cases to support her claim that it is clearly established that Officer Smith's second round of shots violated Mr. Molina's constitutional rights. First, she cites *Fancher v. Barrientos*, 723 F.3d 1191 (10th Cir. 2013), which involved a single police officer confronting three robbery suspects near a residential area. One of the three refused to comply with the officer's instructions to lie down, instead lunging at the officer and grabbing his gun. The two men wrestled over control of the weapon (which eventually discharged, though no one was hit). The officer managed to deploy his taser into the suspect's back, but it did not disable him. The suspect broke free and ran to the driver's seat of the officer's police car, which contained two loaded long guns. The officer pursued, reaching into the car and trying to remove the keys while shouting at the suspect to stop and get out of the vehicle. The suspect struggled

with the officer, pushed his hand away, and then shifted into reverse. The officer fired one shot into the suspect's chest and saw him slump. The officer took a few steps away from the police car as it moved in reverse, away from the officer. Then the officer fired six more shots at the suspect, fatally wounding him. The district court denied the officer's motion for qualified immunity, and the Tenth Circuit affirmed. *Id*. at 1201. It reasoned that the officer used excessive force in firing the second volley of shots. The court based its decision on the fact that the officer could see that after being shot once, the suspect no longer presented a danger to him or to the public. Because the officer fired additional shots after observing that the suspect "was no longer able to control the vehicle, to escape, or to fire a long gun," he was not entitled to qualified immunity. *Id*.

The key difference between *Fancher* and this case is that here, after firing the first shot Officer Smith could not see Mr. Molina in order to determine whether he was still able to wield the weapon with which he had shot Officer Smith only moments before and which, as far as Officer Smith knew, Mr. Molina still had in his possession. In addition, Officer Smith ordered Mr. Molina to put his hands in the air, but after doing so all he could see was Mr. Molina's foot and lower leg emerge from the Honda in a manner that he believed showed an attempt to get out of the car. Thus, Officer Smith could not reasonably conclude that Mr. Molina posed no deadly threat. In contrast, the officer in *Fancher* had the time and the ability to see the suspect and make the reasonable inference that deadly force was no longer needed. However, Mr. Molina's location in the front seat of the Honda and the opacity of the rear window made it virtually impossible for Officer Smith to rule out the possibility that Mr. Molina would continue to attempt to use deadly force against him or to escape in the Honda, presenting an ongoing safety threat to both Officer Smith and to the public.

The second case Plaintiff cites, *Estate of Smart v. City of Wichita*, 951 F.3d 1161 (10th Cir. 2020), is inapposite for the same reason. In *Smart*, which cites *Fancher*, the suspect had fallen to the ground, was lying face down on the ground with his arms stretched out and was unarmed with empty hands visible at the time the officer shot him multiple times. *Id*. at 1176. While lying there, the suspect in *Smart* had time to look back at the officer and shake his head, leading the court to conclude that the officer had enough time to recognize and react to the fact that the suspect posed no threat, and therefore a reasonable jury could conclude that the officer had used excessive force. *Id*. However, the facts in this case are significantly different. Mr. Molina was not unarmed, and Officer Smith did not have the time or opportunity to observe Mr. Molina to determine whether he was still able to use the gun with which Officer Smith had previously been shot.

In sum, Plaintiff has failed to meet her burden to show that Officer Smith's actions were prohibited by clearly established law. The Defendant's motion for qualified immunity should be granted.

**IT IS THEREFORE ORDERED** that *Officer Kevin Smith's Motion for Partial Summary Judgment No. I: Dismissal of the Estate's Fourth Amendment Illegal Seizure . . . Claim[s] Based on the Application of Qualified Immunity* [Doc. 13] is **GRANTED** as to Plaintiff's claim against Defendant Kevin Smith for use of excessive force in violation of the Fourth Amendment, and Defendant is entitled to qualified immunity on that claim.

_____
SENIOR UNITED STATES DISTRICT JUDGE